# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| CHICKY TACKLE, LLC, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 6:18-CV-00063-RWS |
| v. | § § § | |
| MIKE VALLENTINE, CRAPPIE MASTERS, INC., | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants Mike Vallentine and Crappie Masters, Inc.'s Motion to Dismiss Second Amended Complaint (Docket No. 19). The Court heard argument on the motion on June 5, 2018 (Docket No. 41). For the reasons explained herein, the Court **GRANTS** the motion.

## BACKGROUND

Defendants Mike Vallentine and Crappie Masters own and operate Bass Pro Shops Crappie Masters Tournament Trail and TV show. Docket No. 12, Second Am. Compl., ¶ 4.1; Docket No. 20, Answer, ¶ 4.1. Plaintiff Chicky Tackle, LLC, a company with its principal place of business in Helotes, Bexar County, Texas, manufactures and sells fishing equipment, including specialty lures, and sponsors a team in Defendants' tournament series. Second Am. Compl., ¶¶ 3.1, 4.1. Chicky Tackle alleges that Defendants engaged in a fraudulent scheme during the 2015 tournament season that resulted in the Johnson Fishing Team, a major sponsor of the Crappie Masters tournament, finishing in the tournament higher than they should have. *Id*. ¶ 4.2. This, in turn,

resulted in the Johnson Fishing Team winning the 2015 Angler Team of the Year Award, a prestigious fishing award. *Id*.

Specifically, Plaintiff alleges the following fraudulent conduct: Defendant Vallentine improperly loaned batteries to the Johnson Fishing Team during the St. John's River One-day Tournament in Florida in January of 2015; Defendants, through an agent, led the Johnson Fishing Team to fishing locations during the Santee Lake Marion Tournament in South Carolina in February of 2015; Defendants' staff similarly showed the Johnson Fishing Team where to fish during the Lake Greenwood Tournament in South Carolina in March of 2015; Defendant Vallentine escorted the Johnson Fishing Team down to the Cooper Creek boat ramp, showing the Johnson Fishing Team where to fish during the Truman Lake Tournament in Missouri in August of 2014; Defendant Vallentine permitted an individual to interfere with Plaintiff's fishing during Grenada Lake Tournament in Mississippi in March of 2015; Defendants permitted the Johnson Fishing Team to fish too closely to Plaintiff's team during the Alabama River Tournament held in Alabama in September of 2015; and, one of Defendants' agents admitted that he provided assistance to the Johnson Fishing Team in exchange for valuable fishing equipment. *Id*. ¶¶ 4.3–4.9. After receiving numerous complaints, Defendants administered polygraph tests to four individuals, including the two members of the Johnson Fishing Team. *Id*. ¶ 4.10. Plaintiff alleges that Defendants falsified and lied about the results. *Id*.

As a result of this contest fraud, Plaintiff claims that the Johnson Fishing Team won the 2015 Angler Team of the Year Award by one point over Plaintiff's sponsored team, which had won the tournament the prior two years. *Id*. ¶ 4.12. Plaintiff seeks actual damages of $50,000 for loss of sales and other business and sponsorship opportunities as a result of not winning the Angler Team of the Year Award, punitive damages in the amount of $150,000, declaratory judgment that

declaring Plaintiff's sponsored team the winner of the 2015 Angler Team of the Year Award, and specific performance in recalculating the award points and issuance of corresponding awards.

Chicky Tackle filed the instant cause of action in the 354th District Court of Rains County, Texas, on December 11, 2017. Defendants removed the action to this Court on February 9, 2018. Defendants subsequently moved to dismiss this action under Rule 12 for failure to state a common law claim for fraud, lack of standing to seek a judgment declaring the rights of two non-parties, lack of subject matter jurisdiction over Plaintiff's declaratory judgment claim, lack of personal jurisdiction over Defendants Mike Vallentine and Crappie Master, and improper venue. Docket No. 19.

**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION–12(B)(2)**

**A. Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). A nonresident defendant is subject to the jurisdiction of a federal court sitting in diversity if: (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) exercise of personal jurisdiction by the forum state is consistent with the due process clause of the Fourteenth Amendment. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir.2009)).

The Texas long-arm statute confers jurisdiction over non-residents "doing business" in Texas and extends as far as constitutional due process permits. *See id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West)). The due process clause requires that a court exercise personal jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair

play and substantial justice." *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 212 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction.

If a plaintiff satisfies its burden of making a *prima facie* showing of jurisdiction, the burden shifts to the defendant to show jurisdiction would be unfair, considering: (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interstate judicial system's interest in efficiently administering justice, and (5) the shared interest of the several states in furthering fundamental social policies. *McFadin*, 587 F.3d at 759. The court must accept uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts in favor of the plaintiff. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). In deciding the motion, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

### B. Discussion

#### 1. General Jurisdiction

As an initial matter, it is clear that Chicky Tackle cannot meet its burden to show that Defendants Vallentine and Crappie Masters's contacts with Texas are sufficient to establish general jurisdiction.

General jurisdiction exists when a nonresident defendant's contacts with the forum state are "substantial, continuous, and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-19 (1984). A corporate defendant's place of incorporation and principal place of business are the "paradigm forums" for where it is "at home," and though a defendant may be

at home in additional forums, such a forum is an "exceptional case." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 138 n. 19). The defendant's contacts with the forum state are evaluated "over a reasonable number of years up to the date the suit was filed" and the contacts "must be reviewed in toto, and not in isolation from one another." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) (citing *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986)). When general jurisdiction exists, the forum state may exercise jurisdiction over the defendant on any matter, even if the matter is unrelated to the defendant's contacts with the forum. *Id.* at 613.

Vallentine is a resident of Clinton, Missouri, and is not a Texas resident or citizen. Docket No. 19-1, Decl. of Michael Vallentine ¶ 2. Vallentine further attests he is the president and principal owner of Crappie Masters, which operates out of his home in Clinton, Missouri. *Id*. ¶ 3. Vallentine has never had a telephone number, mailing address or bank account in Texas, *id*. ¶ 13, and has never owned, used, possessed or rented any personal or real property in Texas, *id*. ¶ 12. Similarly, Crappie Masters has never had a telephone number, mailing address, or bank account in Texas. *Id*. ¶ 13. It has never paid taxes in the state of Texas, nor has it ever had any employees, registered agents or representatives in Texas. *Id*. ¶ 15. Accordingly, Defendants are not "at home" in Texas.

Even so, Chicky Tackle argues that Defendants are subject to general jurisdiction in this Court because they have repeatedly organized and operated fishing tournaments in the Eastern District of Texas and actively solicited sponsors in Texas, such as Plaintiff. Docket No. 23 at 15. Specifically, Defendants conducted a one-day fishing tournament in Rains County, Texas at Lake Fork in the years 2013, 2015, 2016 and 2017. *See* Vallentine Decl. ¶ 16. These annual one-day

fishing tournaments in this district, however, do not constitute contacts so "continuous and systematic" as to render this case "exceptional." *See Monkton*, 768 F.3d at 432; *see also Bowles v. Ranger Land Sys., Inc.*,527 Fed.App'x. 319, 321–22 (5th Cir. 2013) (declining to exercise general jurisdiction over an Alabama corporation where its most significant and continuous contact with the forum was having employees located there); *My Fabric Designs, Inc. v. F+W Media, Inc.*, Civil Action No. 3:17-cv-2112-L, 2018 WL 1138436, at *8 (N.D. Tex. Mar. 2, 2018) (finding that defendant's sale of magazines in Texas, presence of two employees in Texas, and *sponsorship of a trade show in Texas* was not sufficient to render the case "exceptional," such that the Texas was the "paradigm forum" for general jurisdiction) (emphasis added); *United States v. Sims*, Civil Action No. 4:17-cv-000495, 2017 WL 5441834, at *5 (E.D. Tex. Nov. 14, 2017) (finding that defendant conducting business in Texas in 2014 and 2015 through a franchise agreement with two Oklahoma companies did not amount to sufficient ties to Texas to confer general jurisdiction).

As Defendants are not residents of Texas or otherwise "at home" in Texas, and Plaintiff has not shown that the limited contacts Defendants have with the forum state make this an exceptional case, the Court finds that exercising general jurisdiction over Defendants is not proper.

**2. Specific Jurisdiction**

A court may also assert specific jurisdiction over a nonresident defendant "whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 212 (citing *McFadin*, 587 F.3d at 759; *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). When a plaintiff asserts specific jurisdiction over a non-resident defendant, the court must determine: (1) whether "the defendant purposefully directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there," and (2) whether "the controversy arises out of or

is related to the defendant's conduct with the forum state." *Freudensprung v. Offshore Technical Servs., Inc.,* 379 F.3d 327, 343 (5th Cir. 2004). The fact that a Texas plaintiff suffered some harm in Texas is insufficient to establish specific jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 473 n. 41 (5th Cir. 2002). Contacts that are "random, fortuitous, or attenuated" do not satisfy the minimum contacts requirement. *Moncrief Oil, Int'l. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).

"The minimum-contacts test for personal jurisdiction in fraud differs from that in contract." *Trois v. Apple Tree Auction Ctr.*, 882 F.3d 485, 490 (5th Cir. 2018). Whereas in a breach of contract case, a court considers whether the defendant had a physical presence in the state, whether it conducted business in the state, and whether the contract underlying the business transaction at issue in the lawsuit was signed in the forum state or called for performance in the state, *see Monkton Ins. Serv., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014), "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum," *Trois*, 882 F.3d at 490 (quoting *Walden v. Fiore,* 571 U.S. 277, 286 (2014)). "The proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation." *Trois*, 882 F.3d at 490 (quoting *Walden*, 571 U.S. at 291).

Plaintiff has asserted a common-law fraud cause of action against Defendants. Therefore, to establish specific jurisdiction based on a tort, Plaintiff must allege intentional conduct by Defendants that creates the necessary minimum contacts with the forum. Here, however, all of the alleged fraudulent conduct and fishing rules violations occurred outside of Texas. *See* Second Am. Compl. ¶¶ 4.3–4.9; Vallentine Decl. ¶¶ 5–10 (rule violations occurring in Florida, South Carolina, Missouri, Mississippi and Alabama). Of the 17 tournaments that made up the 2015 Bass

Pro Shops Crappie Masters Tournament Trail, none took place in Texas. Tr. 8:15–17. At the hearing, Plaintiff agreed that Defendants' contacts directed at Texas do not relate to the actual 2015 tournaments because none of those tournaments took place in Texas. Tr. at 19:14–20.

Rather, Chicky Tackle claims that specific jurisdiction over Defendants is proper because Defendants solicited Plaintiff's sponsorship of the tournament at Plaintiff's place of business in Helotes, Texas, and the president of Chicky Tackle, Charles Sablatura, signed the contract agreeing to sponsor the tour out of this Texas office. Docket No. 23-1, Decl. of Charles Sablatura. According to Plaintiff, "[t]his lawsuit arises from damages incurred by Plaintiff as a result of sponsoring Defendants' tour and tournaments and a team that competed in them." Docket No. 23 at 15; *see also* Tr. 19:21–25 – 20:1–5. ("The Court: So, it is the solicitation of the contract itself that relates to the fraud; is that what you are saying? Plaintiff's Counsel: Correct. That but for the solicitation of that contract and but for the solicitation of Chicky Tackle as a sponsor, we wouldn't be here, we wouldn't have a complaint because we wouldn't have invested in this tour. . . .").

The contract may indeed be a necessary predicate for Plaintiff to bring this suit, without which Plaintiff's cause of action would never have arisen. But it is not in itself sufficient to establish specific jurisdiction for two reasons. First, Plaintiff neither alleges fraudulent inducement of contract nor identifies any tortious conduct committed by Defendants in the forum state. Instead, all of the alleged fraudulent conduct occurred during the tournaments in other states. The Fifth Circuit has permitted the exercise of specific jurisdiction over intentional-tort claims, including fraud, but in each of those instances, the tortious conduct took place in the forum state. *See, e.g.*, *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332, 334 (5th Cir. 1982) (finding specific jurisdiction existed where nonresident defendant made one defamatory call to a forum resident); *Moncrief*, 481 F.3d at 314 ("When a nonresident defendant commits a tort within the state . . . that

tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state . . . to exercise personal adjudicative jurisdiction . . . ."); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *Trois*, 882 F.3d at 491 (finding that non-resident defendant who did not initiate calls to plaintiff was still subject to specific jurisdiction in Texas because he was a key negotiating party who made representations regarding his business on the phone).

Second, even if Plaintiff had sufficiently pleaded a breach of contract action, the solicitation of sponsorship and execution of the contract in Texas would not be sufficient minimum contacts to establish personal jurisdiction over Defendants in Texas. The Fifth Circuit has repeatedly held that

> the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

*Freudensprung*, 379 F.3d at 344 (5th Cir. 2004). Communications incidental to forming, negotiating, and performing under a contract with a forum resident are also similarly insufficient. *See McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) ("[C]ommunications relating to the performance of a contract themselves are insufficient to establish minimum contacts.").

Moreover, though the parties have an ongoing business relationship that dates back several years, Defendants' contacts with Texas, specifically the yearly sponsorship renewal and the one-day fishing tournaments in Rains County, Texas, at Lake Fork, these contacts are too sporadic and unrelated to Plaintiff's fraud cause of action to satisfy the minimum contacts requirement under any cause of action. *See Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 212.

Because Chicky Tackle has not satisfied its burden of making a *prima facie* showing of general or specific jurisdiction over Defendants Vallentine and Crappie Masters, the Court cannot constitutionally exercise personal jurisdiction over Defendants Vallentine and Crappie Masters and, therefore, need not consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *See Southern Copper, Inc. v. Specialloy, Inc.*, No. 00–50408, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (per curiam); *Felch v. Transportes Lar–Mex SA DE CV*, 92 F.3d 320, 329 n. 20 (5th Cir. 1996). Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Second Amended Complaint for lack of personal jurisdiction.

### MOTION TO DISMISS FOR IMPROPER VENUE – 12(B)(3)

Defendants also move for dismissal under Rule 12(b)(3) for improper venue. FED. R. CIV. P. 12(b)(3). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See* 28 U.S.C. § 1406(a). Whether venue is "wrong" or "improper" for purposes of § 1406(a) and Rule 12(b)(3) is "generally governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Section 1391 provides: "[e]xcept as otherwise provided by law ... this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a). Subsection (b) further instructs:

> [a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."
> 28 U.S.C. § 1391(b).

Having found that neither Defendant resides in Texas and that none of the conduct giving rise to Plaintiff's claims arose in this district, venue is also not proper in this district under § 1391(b)(1) and (b)(2).

Plaintiff seeks, in the alternative to dismissal, that the Court transfer this case to the Western District of Texas or allow limited discovery to further investigate jurisdiction and venue issues. Docket No. 23 at 16; 28 U.S.C. § 1406(a). Plaintiff has not demonstrated, however, how the interests of justice would favor transfer over dismissal. Plaintiff does not make any argument that the statute of limitations would bar Plaintiff from refiling its claims if the Court dismissed the action rather than transferred it. Moreover, for the same reasons venue is not proper in the Eastern District of Texas, i.e., Defendants do not reside in Texas and none of the conduct giving rise to Plaintiff's claims occurred in Texas, the Court is not convinced venue would be proper in the Western District of Texas. Nor has Plaintiff shown how venue-related discovery would cure these defects.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss for improper venue and **DENIES** Plaintiff's request to transfer this case to the Western District of Texas. Plaintiff's request to conduct jurisdictional and venue-related discovery is also **DENIED**.

## REMAINING GROUNDS FOR DISMISSAL

Defendants further move for dismissal under Rule 12(b)(6) for failure to state a claim, Rule 12(b)(1) for lack of standing to seek a declaratory judgment with respect to the individual fishermen sponsored by Plaintiff, and Rules 12(b)(7) and 9(b) for failure to join the members of the Johnson Fishing Team. Having found that both jurisdiction and venue are not proper, the Court does not reach Defendants' remaining bases for dismissal.

## CONCLUSION

It is, therefore, **ORDERED** that Defendants' motion to dismiss (Docket No. 19) is hereby **GRANTED** and Plaintiff Chicky Tackle's claims are **DISMISSED WITHOUT PREJDUICE** for lack of personal jurisdiction and venue. Plaintiff's request to transfer this case to the Western District of Texas and for jurisdictional and venue-related discovery are **DENIED.**

**SIGNED this 7th day of September, 2018.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE